**Mrs. Alene G. BROWN, Appellant,**

v.

**Jennie BRISCO and Sidney Charles Brisco, Appellees.**

**No. 11794.**

Court of Civil Appeals of Texas, Austin.

Feb. 24, 1971.

William H. Borchers, New Braunfels, Ragan, Russell & Rorschach, John L. Russell, Houston, for appellant.

Beckmann, Stanard, Wood & Keene, Melvin A. Krenek, San Antonio, for appellees.

O'QUINN, Justice.

This is a suit for damages growing out of a rear-end collision on a public road in Comal County.

Mrs. Alene G. Brown, appellant, brought this action to recover damages for personal injuries she alleged were sustained July 14, 1968, when the pickup she was driving was struck from behind by an automobile owned by Jennie Jo Brisco but then being driven by her son, Sidney Charles Brisco. The accident occurred on the Old Sattler Road, on a Sunday morning shortly before 11 o'clock, about thirteen miles north of New Braunfels.

Immediately before the accident Mrs. Brown slowed her vehicle to avoid striking an armadillo on the highway, and the Brisco car, traveling in the same direction, collided with the rear of the Brown pickup.

Upon findings of the jury, the trial court entered judgment that plaintiff, Mrs. Brown, take nothing, from which judgment Mrs. Brown has appealed.

Appellant brings nineteen points of error, and states her position that the " * * verdict, judgment and order are all without any support of evidence as a matter of law, and therefore they are the result of fundamental error of the jury and the trial court of gross character." Appellant further asserts, "The findings of the jury and the judgment of the trial court are so contrary to the evidence as to be clearly wrong and unjust under the record of the case as now presented."

The jury failed to find that Brisco (1) kept an improper lookout, (2) failed to apply his brakes, (3) and was driving imprudently close to Mrs. Brown's pickup. The jury did find that Brisco failed to alter the course of his vehicle, but that such failure was not negligence. The jury found the

collision was not the result of an unavoidable accident.

The jury absolved Mrs. Brown of failure to keep a proper lookout, but found that she suddenly decreased the speed of her vehicle just prior to the accident and that such decrease in speed was negligence and a proximate cause of the collision. The jury acquitted Mrs. Brown of failure to give a signal that she was slowing down and found it was not negligence for her not to increase the speed of her pickup immediately prior to the accident.

The jury found that Mrs. Brown incurred charges for medical services and treatment as a result of the accident in the amount of $230, but that she was not entitled to any compensation for future medical expenses.

Under the first eight points of error appellant contends that the jury's findings that Brisco (1) did not fail to keep a proper lookout, (2) did not fail in exercise of ordinary care to apply his brakes, (3) was not driving imprudently close to the Brown vehicle, and that (4) failure to change the course of his vehicle was not negligence were supported by no evidence and were against the overwhelming weight and preponderance of the evidence.

We have examined the entire record with care, and we conclude that such findings of the jury were supported by legally sufficient evidence and that the findings were not against the overwhelming weight and preponderance of the evidence.

It is undisputed that the accident happened on the Old Sattler Road, a hard-surface roadway about sixteen feet wide which affords ample room for two vehicles to meet and pass, or for one vehicle to overtake and pass another traveling in the same direction. The parties are in agreement that the roadway in the area of the collision is straight, slightly undulating, but affording a clear view for a distance of several hundred yards in each direction from the point of impact. The road surface was dry and the day of the accident was clear. The paved portion of the roadway was bordered on each side by grassy shoulders upon which a vehicle might be driven with safety.

There were three eyewitnesses to the collision and to the events leading up to the accident. Both Mrs. Brown and Sidney Brisco testified. Testimony was introduced from Charles Ezell who was driving a pickup, meeting the Brown and the Brisco vehicles immediately before the collision. Ezell also saw the vehicles in his rear view mirror as they collided and heard the impact.

Ezell, who at the time of the accident in July, 1968, was a chemist for the Texas Parks and Wildlife Department, was driving a State owned pickup westerly along Old Sattler Road and met the Brown pickup and the Brisco car traveling easterly on the road. Ezell testified that he and another employe of the department traveling with him had stopped at Kanz store, situated on the road "a short distance" from the scene of the collision, and shortly after leaving saw an armadillo crossing the road in front of them from right to left. Ezell observed Mrs. Brown's pickup approaching, meeting the State pickup, with the Brisco car following the Brown vehicle.

When first observed, Ezell testified, Mrs. Brown's car was "probably 100 feet, 150 feet" from the armadillo. At that time Ezell was passing the animal as it moved into the traffic lane ahead of the Brown and Brisco vehicles. Ezell testified that as Mrs. Brown " * * * got just even with me * * * she was reducing her speed", and after Mrs. Brown passed, Ezell stated, "I looked in the rear view mirror and her stop lights were on, and she was braking, as I recall, rather rapidly. She wasn't skidding her tires, but she was slowing."

Ezell testified, " * * * after I had glanced in the rear view mirror and saw that Mrs. Brown was stopping or braking, I looked up the road and saw the other car

[Brisco] possibly a hundred feet up the road approaching." Ezell testified that at that time the Brown pickup was "50 to 60 feet" behind Ezell and that the distance between the Brisco car and the Brown pickup "was somewhere between 100, 200 feet." Ezell testified that Brisco "wasn't driving at an excessive speed. I would say he was traveling in the range of 35 to possibly 40 to 45 miles an hour." Under cross examination Ezell testified that as the Brown pickup and the Brisco car were traveling along the road, prior to the moment Mrs. Brown started reducing her speed, the two vehicles were "five to six" car lengths apart.

Ezell testified that he was driving between thirty and forty miles an hour and that the time elapsing between the moment Mrs. Brown started braking her pickup and the moment of impact was "five to ten seconds."

Ezell stated that as Brisco "got almost even with me he was looking in our direction." Ezell's description of the collision, from that point on, is found in the following dialogue:

"Q But as he passed you did you observe him to be braking or slowing that speed [35 to 45 miles per hour] at all?

"A No, sir, not immediately, I did not.

"Q Having observed the armadillo, the Brown car and Mr. Brisco's, did you formulate an opinion prior to the collision that one was about to occur?

"A Yes, sir, I did.

"Q Did you make—What caused you to make this observation?

"A Well, first, of course, I had noticed Mrs. Brown braking her car and the mere fact that Mr. Brisco was looking in our direction and I knew Mrs. Brown was braking her car, rather fast. I didn't see hardly how he could avoid hitting Mrs. Brown's car.

"Q Did you continue to observe him in your rear view mirror?

"A Yes, sir.

"Q Did you see the collision occur?

"A I saw glass fly, yes, sir."

\*    \*    \*    \*    \*    \*

"Q And you heard the collision?

"A Yes, sir, we did hear the collision."

\*    \*    \*    \*    \*    \*

"Q How far behind you were the two cars when the collision occurred?

"A Again, it's hard to judge distance, especially from a moving vehicle. I'd say, possibly 150 feet.

"Q Did you observe any skid marks behind the Brisco car after the accident occurred?

"A Yes, sir.

"Q Do you recall how long they were?

"A No, sir, I don't. They were short skid marks."

\*    \*    \*    \*    \*    \*

"A They wouldn't have exceeded 10 feet, no sir."

Ezell testified that before the impact of the two vehicles he saw the Brisco brake lights come on, and that the skid marks made by the Brisco vehicle ended at the point of impact, where the car came to a stop, and that Mrs. Brown's car traveled 100 to 200 feet after the impact. Mrs. Brown later testified that the impact damaged her brake system and she could not stop the pickup by means of the brakes.

Ezell stated that Mrs. Brown was traveling about 40 miles an hour when she started reducing her speed, which was at a point "immediately in front of our [Ezell's] vehicle" immediately prior to passing Ezell. At that time the Brisco car was five or six car lengths behind Mrs. Brown, Ezell said.

Ezell's testimony is quoted further:

"Q At that point, that's where you first had seen her cut her speed, wasn't it?

"A  Yes, sir, that's when she first started reducing her speed.

"Q  That was the first level I think, some 40 down to 25 miles an hour.

"A  Yes, sir."

\*    \*    \*    \*    \*.    \*

"Q  \* \* \* just state in your own words the point at which you observed her car and the speed she was going at in relation to the Brisco car being some five or six car lengths behind her.

"A  When I noticed that the Brisco car was five to six car lengths behind, Mrs. Brown's car was immediately in front of me and she was braking at this point.

"Q  She had already started to braking her speed?

"A  Yes, sir.  The angle of her vehicle changed such that you could tell that she was applying the brakes.

"Q  At that point what was your opinion of her speed, sir?

"A  You mean in miles per hour?

"Q  Yes, sir.

"A  This again, 20 to 25 miles an hour."

In the course of his testimony, Ezell stated that after Mrs. Brown started reducing her speed, she did so "rather fast" and "fairly rapidly."

"She was reducing her speed rapidly," Ezell said of Mrs. Brown, and this interrogation ensued:

"Q  And this distance then I'm assuming, was closing between the Brown and Brisco car?

"A  At this time, yes, sir, it was.

"Q  Because she was braking and the boy was still driving about the same rate as he came past you?

"A  Right, sir.

"Q  It was some time after that he applied his brakes, did leave some skid marks, the distance between them got to zero.

"A  Right, sir.

"Q  And they did have an impact.

"A  Yes, sir.

"Q  How fast were you going during all this, Mr. Ezell?

"A  I'd say between 30 and 40 miles an hour.

"Q  Roughly the same speed they had been going?

"A  Yes, sir."

\*    \*    \*    \*    \*    \*

"Q  \* \* \* if I understand your testimony \* \* \* your best recollection [is] that these two cars started out about five to six car lengths apart, and that distance got down to zero.

"A  Yes, sir.

"Q  It wasn't any great length of time; all of this happened in just a matter of a very few seconds, didn't it?

"A  Right.

"Q  I believe you said five seconds, or thereabouts?

"A  Five to ten, yes, sir.

"Q  Could have actually have been a little less than five?

"A  Could have been less.

"Q  Could have been a little more?

"A  Right.

"Q  Five seconds is as you recall?

"A  Yes, sir."

The testimony of Ezell, who was a disinterested witness and a stranger to the parties, was corroborated in some details by both Mrs. Brown and Sidney Brisco.

Brisco testified that he was following Mrs. Brown's pickup at a distance of five to six car lengths as they approached the oncoming Ezell vehicle.  Brisco believed a car length to be 15 to 17 feet, or a "little

longer on some cars," and he placed the distance between his vehicle and Mrs. Brown's at 80 to 100 feet. Brisco also stated that he and Mrs. Brown were traveling at about the same speed, or 35 to 40 miles an hour. This version of distances, positions, and speed is approximately in accord with Ezell's testimony.

Brisco, who at the time of the accident was about 17 years old, lived in the area and testified he was familiar with trucks of the Parks and Wildlife Department. He recognized the pickup Ezell was driving as a "game warden truck" before the vehicles met. Brisco stated that he did not remember looking to the left at the State truck as he passed it, but added, "If he [Ezell] said I did, I must have glanced over there."

Young Brisco testified that as he passed the Ezell vehicle he was still five or six car lengths behind Mrs. Brown, or about "eighty to one hundred feet." Brisco stated that right after he passed Ezell's truck he saw Mrs. Brown's pickup "suddenly come to a stop." Brisco conceded on cross examination that the Brown pickup might not have been stopped completely but he was firm that "It wasn't going over 5 or 10 miles an hour." Brisco testified that he "let off on the accelerator" as he passed the Ezell truck and when he saw Mrs. Brown's car stopped, or moving 5 to 10 miles an hour, his vehicle was traveling 30 to 35 miles an hour. When asked what he did at that time, Brisco answered, "Hit my brakes, turned to the left, and tried to go around her, but it didn't work." On cross examination Brisco stated that at a speed of 30 to 35 miles an hour it would take him about 100 feet to stop his vehicle.

It appears undisputed that as Sidney Brisco was traveling from his home to go to the Kanz store, Mrs. Brown entered Old Sattler Road from a side road ahead of Brisco, who slowed down to permit her to make the turn and proceed ahead of him. From that point to the scene of the accident Brisco followed the Brown vehicle.

Mrs. Brown testified that she "saw something in the road" which she "found was an armadillo" and she "wanted to slow down to avoid hitting it." Mrs. Brown continued, " * * * so I looked in my rear view mirror to be sure that it was safe to slow down and I saw Mr. Brisco's car behind me and I felt there was lots of time to slow down."

Mrs. Brown was then asked, "At that point, you saw him how far behind you * * *?" Her answer was, "About a thousand feet."

Further interrogation of Mrs. Brown produced this testimony:

"Q Mrs. Brown, when you first saw the armadillo, how far was it from you?

"A I would say 100 or 150 feet.

"Q Out in front of you?

"A Yes, sir.

"Q What did you do?

"A I started slowing down. That was after I looked in my mirror and saw Mr. Brisco's car."

*    *    *    *    *    *

"Q Over what distance did you slow your car?

"A However long it takes to look in the mirror and see the other car and realize I had time to slow down.

"Q Do you know what distance that might have been from your observations?

"A 100, 125 feet."

*    *    *    *    *    *

"Q When you slowed your car did you observe his car again?

"A Yes. As I slowed down, after I had slowed down where I thought I would miss the armadillo, and I put my foot from the brake to the gas I looked in my rear view mirror and I saw that he was going to hit me.

"Q What did you see when you saw he was going to hit you?

"A I saw he was just directly behind my car, and at that time he hit me.

"Q Did he put his brakes on about that time?

"A Well, I suppose that he did, because I saw the skid marks. It happened so suddenly I couldn't say whether I heard anything or not.

"Q What happened so suddenly?

"A The accident; from the time that I saw that he was going to hit me and he hit me.

"Q This was when he was right behind you?

"A Yes, sir."

Mrs. Brown thought she "must have passed Mr. Ezell right at the armadillo. I can't say for sure, but I would think that—" Mrs. Brown testified that after she passed the armadillo she took her foot off the brake and put it back on the accelerator. She estimated that she traveled "200 or 250" feet from the first time she saw the armadillo to the time of the impact.

Appellant elicited testimony from Sidney Brisco that he had worn glasses for a number of years to correct faulty vision. Appellant argues on appeal that the boy's vision required annual checkups and that he had not had his annual checkup at the time of the accident. Jennie Jo Brisco, Sidney's mother, testified that Sidney had worn glasses since he was nine years old to correct his vision, and that his lenses so corrected his sight as to afford him 20/20 vision. It is undisputed that Sidney Brisco was wearing glasses at the time of the accident. Mrs. Brisco also testified that a checkup was obtained each year prior to the opening of school as a matter of precaution, but that through the years changes in lenses were not required every year.

Brisco testified that when he saw Mrs. Brown slowing or stopped he made two applications of his brakes. When he saw Mrs. Brown's car "slowing or stopped," Brisco stated, " * * * I thought I might have time just to slow down and then when I didn't I hit my brakes hard." Interrogation continued:

"Q When you first applied your brakes that first time to slow, had you applied the brakes hard to stop might you not have stopped?

"A Yes, sir, I think I would have."

Brisco explained further that he did not feel he misjudged distance between his car and the Brown pickup, but said, "I think what it was I might have misjudged her speed." He said if he had not misjudged Mrs. Brown's speed, he might have gone around Mrs. Brown's car.

Further questions of Brisco produced this testimony:

"Q * * * you realized you were going to have to stop, didn't you?

"A Yes, sir.

"Q But it was a second or so later, wasn't it?

"A It could have been half a second, I don't know. It was very rapidly, though."

Brisco stated that it was about five seconds, "maybe a little more, a little less," after he passed Ezell's truck before he had the accident.

If the jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, rejected the exculpatory portions of Mrs. Brown's testimony, there remained in the testimony of Ezell and Brisco sufficient evidence upon which to rest the findings that Sidney Brisco was without fault.

Mrs. Brown stated that when she saw the armadillo in the road ahead of her she took time to look at her rear view mirror

and see that Brisco was 1,000 feet to her rear, and that it was only then that she applied her brakes. Both Ezell and Brisco testified that the distance between the Brown and Brisco vehicles was at most six car lengths, or a distance of about 100 feet, and that the two cars were traveling at about the same speed as they approached the Ezell pickup.

The time elapsing between the moment Mrs. Brown started "reducing her speed rapidly" until the vehicles collided was fixed by Ezell at not more than five to ten seconds. Brisco estimated the time elapsing between the moment he passed Ezell until he struck Mrs. Brown's pickup to be about five seconds. Except for the testimony of Mrs. Brown, it appears undisputed that the accident happened very quickly after the vehicles passed Ezell. Brisco thought he might have misjudged the speed of Mrs. Brown's pickup when he discovered she had reduced her velocity. The jury found that Mrs. Brown's sudden reduction of her speed was negligence and a proximate cause of the collision.

To accept fully Mrs. Brown's version of the accident, the jury was called upon to believe that after Mrs. Brown saw the armadillo and started reducing her speed, from 40 miles to five or ten miles an hour, she traveled "100, 125 feet" and Brisco in the same interval covered "about a thousand feet," plus an additional "100, 125 feet", or more, to the point of impact. To achieve this result, the speed of the Brisco vehicle would have been about ten times the average speed of the Brown pickup. It is undisputed, except by inference from Mrs. Brown's testimony, that Brisco was traveling about the same speed as Mrs. Brown was going as she approached the Ezell truck, and before she started braking her pickup.

We have examined the statement of facts and the transcript, as well as all the exhibits, and in doing so we have kept in mind and applied the rules we must follow in passing on "no evidence" points of error and in considering points asserting that the jury findings are against the overwhelming weight and preponderance of the evidence.

The first eight points of error are in all things overruled. Since we have concluded that the jury findings acquitting Sidney Brisco of negligence are supported by evidence of probative force and are not against the great weight and preponderance of the evidence, we do not reach the remaining points brought by appellant.

The judgment of the trial court is affirmed.

Affirmed.